IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN DOE,<br><br>        **Plaintiff,**<br><br>    vs.<br><br>**BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, and MEAGAN COUNLEY, In her official capacity,**<br><br>        **Defendants.** | **4:25CV3058**<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on the Motion to Strike Jury Demand (Filing No. 64) filed by Defendants, Board of Regents of the University of Nebraska ("BRUN") and Meagan Counley, in her official capacity. Defendants request that the Court strike Plaintiff's demand for a jury trial as to Counts I (violation of Title IX) and II (Violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983) of the First Amended Complaint. For the following reasons, the Court will grant the motion.

## BACKGROUND

John Doe ("Doe") contends he was falsely accused of rape and unfairly expelled from the University of Nebraska-Lincoln (the "University") after a biased investigation and disciplinary hearing conducted under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 et seq. In his First Amended Complaint (Filing No. 18), Doe alleges Toni Anaya ("Anaya"), a University employee who chaired his hearing board, and Meagan Counley ("Counley"), the University's Title IX Coordinator, violated his constitutional rights by treating him differently than his accuser as a result of discriminatory animus based on his sex. Doe also alleges Jane Roe ("Roe") defamed him by falsely accusing Doe of rape. *Id.*

On August 21, 2025, the Court granted Roe's motion to dismiss, and dismissed Doe's defamation claim against Roe for failure to state a claim, with prejudice. (Filing No. 42). On October 14, 2025, the Court granted Anaya and Counley's motion to dismiss Doe's equal protection claims against them. (Filing No. 43). Following this motion practice, the following claims remain in Plaintiff's First Amended Complaint: Count I, alleging a violation of Title IX

1

against BRUN, seeking compensatory damages, and declaratory and injunctive relief; and Count II, a 42 U.S.C. § 1983 claim for violation of the Due Process Clause of the Fourteenth Amendment against Counley, in her official capacity, seeking declaratory and injunctive relief.

Defendants have now filed a motion to strike Plaintiff's jury demand as to Counts I and II of the First Amended Complaint. Defendants argue Plaintiff does not have a constitutional or statutory right to a jury trial against them, as a state agency and state agency official sued in her official capacity, because although they waived their sovereign immunity from suit, there is no clear or express language waiving their sovereign immunity from jury trial.

### ANALYSIS

Defendants have moved to strike Plaintiff's jury demand for his remaining claims, asserting that neither Title IX, 42 U.S.C. § 1983, nor the Seventh Amendment grants a right to a jury trial in an action against a state entity or officer of a state entity acting in her official capacity because they enjoy sovereign immunity.

Before inquiring into the applicability of the Seventh Amendment in this case, the Court must first "'ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998) (quoting *Tull v. United States*, 481 U.S. 412, 417, n. 3 (1987)) (alteration in original); *accord Curtis v. Loether*, 415 U.S. 189, 192, n. 6 (1974) ("[T]he cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the (constitutional) question may be avoided."). In this case, the constitutional question cannot be avoided because neither the provisions of Title IX nor § 1983 contain explicit textual authorization for a jury trial. *See* 42 U.S.C. § 2000d-7 (2026); 42 U.S.C. § 1983 (2026); *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999) ("The character of § 1983 is vital to our Seventh Amendment analysis, but the statute does not itself confer the jury right.").

The right to a jury trial in suits over twenty dollars at common law is a protection guaranteed by the Seventh Amendment. U.S. Const. amend. VII. "[T]he thrust of the [Seventh] Amendment was to preserve the right to jury trial as it existed in 1791," and "applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41-42 (1989)

(citing *Curtis*, 415 U.S. at 193). "To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must examine both the nature of the action and of the remedy sought." *Tull v. United States*, 481 U.S. 412, 417 (1987). The Supreme Court has established a two-part test to determine whether the Seventh Amendment applies to a particular cause of action. *See id.* at 417-18. First, the court must compare the statutory action to an "18th century action brought in the courts of England prior to the merger of the courts of law and equity" in order to determine whether similar cases were brought before a jury. *Id.* If it is a type of action analogous to a suit customarily brought in the English law court, the court must next determine whether the remedy sought is legal or equitable in nature. *Id.* If the remedy sought is legal in nature, then the Seventh Amendment provides a right to a jury trial. *See id.*

In this case, the Court must first determine whether either of Plaintiff's causes of action against Defendants under Title IX or § 1983 is analogous to an action that could have been brought at law in 1791. *See Curtis*, 415 U.S. at 194; *Tull*, 481 U.S. at 417. There is no 1791 action equivalent to causes of action under either Title IX or § 1983. *Doe v. Bd. of Regents of the Univ. of Nebraska*, 2023 WL 2351687, at *6 (D. Neb. Mar. 3, 2023) (holding that there was no 1791 action equivalent to a Title IX claim against state officials); *Abdulsalam v. Bd. of Regents of the Univ. of Nebraska*, 2023 WL 2374460, at *4 (D. Neb. Mar. 6, 2023) (finding that there was no action equivalent to a Title IX claim against a state entity when the Seventh Amendment was adopted); *City of Monterey*, 26 U.S. at 709. However, it is settled law that the Seventh Amendment contemplates statutory claims that "sound basically in tort" and seek legal relief, even if such actions were unknown at common law. *City of Monterey*, 26 U.S. at 709 (quoting *Curtis,* 415 U.S. at 195-196)). Thus, before reaching the issue of sovereign immunity, Plaintiff's § 1983 claim appears to pass the first part of the test. *See City of Monterey*, 26 U.S. at 709 ("We hold that a 1983 suit seeking legal relief is an action at law within the meaning of the Seventh Amendment."). Plaintiff concedes, however, he does not have a right to a trial by jury for his § 1983 claim against Counley because Plaintiff only seeks equitable relief. (Filing No. 66 at p. 5 fn. 1). Accordingly, Plaintiff's demand for a jury trial for his claim under § 1983 in Count II against Counley in her official capacity is stricken.

Plaintiff contends that his other remaining claim under Title IX against BRUN confers the right to a jury because it is analogous to a § 1983 cause of action, also sounding basically in tort.

3

(Filing No. 66 at pp. 3–5).  Still, assuming *arguendo* that Title IX claims are analogous to pre-Seventh Amendment tort actions, the existence of an analogous 1791 action alone does not conclude the inquiry.  *See City of Monterey*, 26 U.S. at 708 ("We ask, first, whether we are dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was. . . [W]e then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791.") (citation and internal quotation marks omitted); *Westcott v. City of Omaha*, No. CV88-0-28, 1988 WL 383125, at *2 (D. Neb. Apr. 11, 1988) ("If the action is a common law suit . . . but no right of jury trial existed under the common law of England as to that type of action, then there is no right to a jury trial by virtue of the Seventh Amendment.").  Although tort actions certainly existed and were tried at law in 1791, an action such as the Plaintiff's Title IX claim would not have been tried by a jury because "no action for damages . . . lay against public officials acting in their official capacities as agents of the sovereign."  *Buss v. Douglas*, 59 F.R.D. 334, 336 (D. Neb. 1973).  Because the Seventh Amendment does not create a right to a jury trial, and instead only preserves jury trial rights as they existed in 1791, if sovereign immunity would have foreclosed suit entirely in 1791, there is no jury trial right to now preserve.  *See Oglesby v. Lesan*, 2017 WL 2345666, at *8 (D. Neb. May 30, 2017) ("The Seventh Amendment did not create a right to jury trial, but instead preserved that right in the federal courts as it existed at common law in 1791."); *Gragg v. City of Omaha*, 812 F. Supp. 991, 992-3 (D. Neb. 1993) ("[S]ince there was no common law right to sue the political subdivisions of the State of Nebraska, there was no Seventh Amendment right to a jury trial.") (citing *Galloway v. United States*, 319 U.S. 372, 388-9 (1943)).

Defendants, as a state agency and state agency official in her official capacity, are entitled to state sovereign immunity under the Eleventh Amendment.  *See Doe v. Univ. of Nebraska,* 451 F. Supp. 3d 1062, 1101 (D. Neb. 2020).  Although a sovereign may consent to a lawsuit against it or its agents, the consent must occur on the sovereign's own terms.  *See United States v. Sherwood,* 312 U.S. 584, 586 (1941).  "Courts 'give effect' to a state's waiver of sovereign immunity 'only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'"  *Church v. Missouri*, 913 F.3d 736, 743 (8th Cir. 2019) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990)); *see also Burke v. Bd. of Trustees of Nebraska State Colleges*, 924 N.W.2d 304, 311 (Neb. 2019) ("A waiver of sovereign immunity is found only where stated by the most express language of a

4

statute or by such overwhelming implication from the text as will allow no other reasonable construction."). "[A] waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999); *see also Edwards v. Douglas Cnty.*, 953 N.W.2d 744, 750-51 (Neb. 2021) ("[S]tatutes purporting to waive the protection of sovereign immunity are to be strictly construed in favor of the sovereign and against waiver.").

Plaintiff argues that because Defendants accepted federal funds, they have waived their immunity from Title IX claims. (Filing No. 66 at p. 11). Plaintiff further argues that because nothing in the language of Title IX or 42 U.S.C. § 2000(d)-7 suggests that such a waiver is partial, it would be improper to read a caveat into the waiver by not finding immunity from trial by jury simultaneously waived. (Filing No. 66 at p. 11). This argument cleverly reframes the negative space of the waiver as positive by arguing that the absence of an express grant is an affirmative entitlement. Contrary to the Plaintiff's argument, however, BRUN does not rely on an implied exception to the waiver: it is the Plaintiff who seeks to rely on an implied extension of it. It is undisputed that a state voluntarily waives sovereign immunity against suits for alleged Title IX violations by accepting federal financial assistance. *See Fryberger v. Univ. of Arkansas,* 889 F.3d 471, 474 (8th Cir. 2018) (discussing 42 U.S.C. § 2000d-7(a)(1)). But a sovereign only waives immunity on the sovereign's own terms, and those terms are strictly construed. *See Sherwood,* 312 U.S. at 586; *Blue Fox,* 525 U.S. at 261.

Nothing in the language of Title IX or 42 U.S.C. § 2000(d)-7 explicitly imposes a waiver of sovereign immunity that includes a jury trial or that requires a trial by jury. Rather, the statute is silent on the issue of a party's right to a jury trial. Because there is no explicit waiver of immunity as it relates to a jury trial, the Court must construe the scope of waiver in favor of immunity. *See Blue Fox*, 525 U.S. at 261 ("[A] waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign."); *see also Frosh ex rel. Rohrbouck,* 2006 WL 3388642, at *2 ("There is no provision in the Rehabilitation Act or the [Individuals with Disabilities Act] either imposing a waiver of sovereign immunity including a jury trial or even requiring trial by jury."). "This court has consistently held that BRUN has not waived sovereign immunity that extends to jury trials in Title IX actions." *Scoggin v. Bd. of Regents of Univ. of Nebraska*, 2025 WL 786555, at *1 (D. Neb. Mar. 12, 2025) (collecting cases); *see also Abdulsalam,* 2023 WL 2374460, at *2 (holding that although Title IX waives state sovereign

5

immunity from suit, there is no provision in Title IX imposing a waiver that extends to a jury trial); *Doe 1 v. Bd. of Regents of Univ. of Nebraska*, 2023 WL 3548212, at *2 (D. Neb. May 18, 2023) (finding that Title IX and 42 U.S.C. § 2000d-7 do not explicitly contain waivers of sovereign immunity that extend to a jury trial).

Nebraska law further illustrates that, without an express provision relating to jury trials, a waiver of sovereign immunity from suit does not automatically encompass a waiver of immunity from trial by jury. In the tort context, Nebraska has waived its immunity through the adoption of the Political Subdivision Tort Claims Act ("PSTCA"). See Neb. Rev. Stat. § 13-902. Under the PSTCA, Nebraska waives immunity from suit, but does not consent to a trial by jury and instead requires suits to "be heard and determined by the appropriate court without a jury." Neb. Rev. Stat. § 13-907; *Villaneuva v. City of Scottsbluff*, No. 4:11CV31185, 2012 WL 45406 at * 1 (D. Neb. 2012) ("Although Nebraska has, by statute, waived its sovereign immunity with respect to suits against its political subdivisions . . . this waiver is limited and does not permit such actions to be tried before a jury.") (quoting *Rohren v. Centennial Public School Dist. 67-R*, 2007 WL 4118943 at *1 (D. Neb. 2007)). Although, as Plaintiff correctly points out, the PSTCA is not directly applicable to this Title IX action, it nonetheless instructive. Plaintiff contends that his Title IX claim is analogous to a common law tort action; the PSTCA reflects Nebraska's treatment of tort claims against the State and demonstrates that the legislature has not waived immunity from trial by jury in such actions.

Defendants, as a state agency and state agency official sued in her official capacity, have sovereign immunity. Although Title IX waives state sovereign immunity from suit, there is no provision in Title IX imposing a waiver of sovereign immunity that includes a right or requirement to jury trial. Because there was no common law right to sue the political subdivisions of the State of Nebraska, there was no Seventh Amendment right to a jury trial. As such, Plaintiff is not entitled to a jury trial for his claim against Defendants, and the Court will strike his jury demand as to his claim against BRUN in Count I. Accordingly,

**IT IS ORDERED** that Defendants' Motion to Strike Jury Demand (Filing No. 64) is granted. Plaintiff's demand for a jury trial is stricken as to Counts I and II of his First Amended Complaint.

Dated this 15th day of June, 2026.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge